IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARMEN MARRERO MARRERO, | |
| Plaintiff, | |
| v. | CIVIL NO.: 12-1954 (MEL) |
| ERIC K. SHINSEKI, Secretary of the Department of Veteran's Affairs, | |
| Defendant. | |

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On November 24, 2012, plaintiff Carmen Marrero Marrero ("plaintiff") filed a complaint alleging age discrimination pursuant to the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, gender and national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and "retaliation for previous [Equal Employment Opportunity ("EEO")] activity . . . ."[1] ECF No. 14. On September 29, 2014 the Secretary of the Department of Veteran's Affairs (the "VA"), Eric K. Shinseki, ("defendant") filed a motion for summary judgment arguing that the complaint should be dismissed. ECF No. 40. Pending before the court are defendant's motion and plaintiff's memorandum in opposition. ECF Nos. 40; 48. For the reasons set forth below defendant's motion for summary judgment is granted.

---

[1] The complaint is ambiguous as to whether plaintiff raises a retaliation claim pursuant to Title VII, the ADEA, or both. See ECF No. 1.

## II.   UNCONTESTED FACTS[2]

Plaintiff began working for the VA on June 29, 1987 as a Medical Record Technician.[3]
ECF No. 1, ¶ 6; No. 6, ¶ 6. Since April 11, 2000 plaintiff has worked at the VA as an Accounts
Receivable Technician. ECF Nos. 41, ¶ 100; 49, ¶ 100. Her evaluations at the VA have always
been satisfactory or outstanding and she "has received awards". ECF Nos. 41, ¶¶ 119-20; 49, ¶¶
119-20. Plaintiff's first line supervisor at the VA from 2000 until 2010 was Monserrate León
("León"), her second line supervisor from 2004 to 2009 was Alberto López ("López"), and her
second line supervisor since 2009 has been Víctor Cruz ("Cruz"). ECF Nos. 41, ¶¶ 1; 97; 49, ¶ 1;
97.

---

[2] On October 30, 2014, the court entered an order stating:

> On or before November 4, 2014 the government shall provide *specific citations
> to the record, including page numbers*, for Exhibit I, Exhibit II, Exhibit III,
> Exhibit IV, Exhibit V, Exhibit A, Exhibit B, Exhibit C, Exhibit D, and Exhibit
> E, which are cited in support of its proposed uncontested facts Nos. 4, 8, 9, 15,
> 18, 19, 20, 21, 22, 23, 24, 25, 26, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 44,
> 45, 46, 52, 62, 67, 69, 71, 74, 80, 81, 82, 87, 88, 89, 90, and 91. See ECF No.
> 41. Failure to do so will result in those proposed facts not being taken into
> account when evaluating the motion for summary judgment.

ECF No. 50 (emphasis added). Defendant filed a "motion in compliance" on November 4, 2014, attaching exhibits
that had not previously been included in the record. See ECF No. 51. A review of the new proposed facts, however,
reveals that defendant did not include page numbers to the exhibits, as specifically instructed in the court's order. Id.
Based on the lack of specific citations, plaintiff objects to the majority of the proposed facts at issue. See ECF No.
52. Local Rule 56(e) provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed
by a citation to the specific page or paragraph of identified material supporting the assertion." It states that "[t]he
court may disregard any statement of fact not supported by a specific citation to record material properly considered
on summary judgment." Litigants who ignore Local Rule 56 do so "at their peril." Mariani-Colon v. Dep't of
Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007) (citation omitted). Because defendant failed to
comply with Local Rule 56 both initially and in response to the court's order to remedy the deficiencies, proposed
facts that cite to documents over 3 pages that lack specific citations to the page or paragraph supporting an assertion
have been disregarded for purposes of evaluating defendant's motion for summary judgment.
[3] It is uncontested that on the date of her deposition, on August 29, 2014, plaintiff was 62-years old. ECF No. 41,
¶ 96, 49, at 1. Thus, from at least August 29, 1992 onward plaintiff was 40 years of age or more.

On May 9, 2008 plaintiff's Accounts Receivable Technician position was changed from Grade 7, Step 9 to Grade 6, Step 10.[4] ECF Nos. 41, ¶¶ 42; 102; 52, at 1. Three of plaintiff's coworkers underwent the same change in grade and step, all of whom were over the age of 40. ECF Nos. 41, ¶ 104; 52, at 1. The VA advised plaintiff that she was entitled to pay and grade retention for 2 years after the position downgrade. ECF Nos. 41, ¶ 42; 49, ¶ 42.

At some unspecified point in time after the downgrade, plaintiff became one of the employees affected by a transition to a service program within the VA that created Consolidated Patient Account Centers ("CPAC"), prompting the Human Resources Office to refer plaintiff for an initial qualification in a "Merit Program Certificate."[5] ECF Nos. 41, ¶ 84; 49, at 1. López informed the staff about the possibility that they would need to request a new position within CPAC or obtain another position within the hospital facility. ECF Nos. 41, ¶ 51; 49, ¶ 51. Plaintiff was selected from the VA "Priority Program List" of displaced employees and was reassigned as an Accounts Receivable Technician (Grade 6, Step 10) at a new unit in the Fiscal Service Division. ECF Nos. 41, ¶ 46; 52, at 1.

At some unspecified point after the transition to CPAC, Patsy Waggle ("Waggle"), as Human Resources Assistant for the VA Workforce Management Office located in Topeka, Kansas, made the Announcement No. M-733-055PAW-1 for the Program Support Assistant (GS-0303-06/07) position and performed the "qualification of candidates" to be referred for an

---

[4] Neither complaint (ECF No. 1), nor the facts proposed by the parties (ECF Nos. 41; 49; 52) include a date on which plaintiff learned that the grade and step of her position was "downgraded" from GS-7, Step 9 to GS-6, Step 10. In her complaint to the Equal Employment Opportunity Commission, however, plaintiff alleged that the position downgrade occurred on May 9, 2008. ECF No. 41-1, at 22-23. Additionally, in her deposition plaintiff responded that her position was downgraded on May 9, 2008, as well. ECF No. 41-15, at 23:20.

[5] Neither the complaint (ECF No. 1), nor the facts proposed by the parties (ECF Nos. 41; 49; 52) include a date on which this occurred.

interview.[6] ECF Nos. 41, ¶ 82; 52, at 1. According to the announcement there were 7 vacancies for the position available at the CPAC located in San Juan, Puerto Rico. ECF Nos. 41, ¶ 83; 49, at 1. Plaintiff submitted an application to the Program Support Assistant vacancy announcement while she was employed as an Accounts Receivable Technician at the VA in San Juan. ECF Nos. 41, ¶ 54; 49, at 1. Margaret Russell ("Russell") was the selecting officer for the Program Support Assistant position. ECF Nos. 41, ¶ 59; 49, ¶ 59. Russell selected Jorge Rodríguez ("Rodríguez") and López to be part of a performance based interview ("PBI") panel in order to ask five standardized questions to each qualified candidate. ECF Nos. 41, ¶ 63; 49, at 1. Every candidate for the position underwent a telephonic interview by the two members of the performance review panel and the resulting score was sent to Russell by the interviewers. ECF Nos. 41, ¶ 64; 49, at 1. Rodríguez and López interviewed each of the qualified candidates, scored their responses to the 5 PBI questions with a score of 1 to 5, with 5 representing the highest score, and individually ranked the employee responses. ECF Nos. 41, ¶ 65; 49, ¶ 26. Waggle received the final list of candidates selected by Russell and proceeded to make the job offers. ECF Nos. 41, ¶ 82; 52, at 1. Plaintiff was ranked 19th out of 21 candidates on the interview scores list. ECF Nos. 41, ¶ 69; 49, ¶ 29.[7] Most of the persons hired to the 7 positions were females. ECF Nos. 41, ¶ 114; 49, ¶ 114. The ages of the seven candidates selected ranged approximately from 26 to 61 years; 6 of the candidates selected were under age 40 and 1 was over 40 years of age. ECF Nos. 41, ¶ 64; 49, ¶ 57. In July 2010 plaintiff learned that she was qualified for the Program Support Assistant position, but she was not selected. ECF Nos. 41, ¶ 55; 49, at 1.

---

[6] The vacancy announcement is states that the "open period" for submitting applications to the position was April 22, 2010 to May 12, 2010. See ECF No. 41-11, at 5.

[7] Plaintiff objects to defendant's statement that this was the reason she was not selected, but does not contest that she was ranked 19th on the list of interview scores. See ECF No. 49, ¶ 29.

Plaintiff eventually filed 2 EEO complaints.[8] ECF No. 1, ¶ 35; No. 6, ¶ 35. The Equal Employment Opportunity Commission ("EEOC") issued a Final Agency Decision regarding the cases on September 21, 2012. Id.

**III**.   **LEGAL STANDARD**

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot

---

[8] Neither complaint in this case (ECF No. 1), nor the facts proposed by the parties (ECF Nos. 41; 49; 52) include dates on which plaintiff filed these EEO complaints. The summary judgment record, however, contains two EEO complaints filed by plaintiff, the first of which was filed on February 1, 2010 (ECF No. 41-1, at 22) and the second of which was filed on October 26, 2010 (ECF No. 41-9, at 12).

merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV.  ANALYSIS

### A.  Exhaustion of Administrative Remedies

An aggrieved federal agency employee must first seek EEO counseling within 45 days of the "matter alleged to be discriminatory" or the "effective date" of the personnel action in question. 29 C.F.R. § 1614.105(a)(1). The failure to contact an EEO counselor within the relevant 45-day period causes the plaintiff to lose the right to subsequent pursue the claim in

question in court. See Román-Martínez v. Runyon, 100 F.3d 213, 217 (1st Cir. 1996); see also Velázquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000) (finding administrative remedies were not exhausted since plaintiff did not make contact with an EEO counselor within 45 days as required by the regulations).

Defendant contends that plaintiff failed to exhaust administrative remedies with regard to her claim that the "downgrade" of her position from Grade 7, Step 9 to Grade 6, Step 10 was discriminatory, and therefore asserts that she is barred from bringing that claim in the case of caption. ECF No. 42, at 17. Defendant cites to a letter from the EEOC to plaintiff dated April 12, 2010, in which the EEOC notified plaintiff of its acceptance of a hostile work environment claim, but dismissed her claim regarding the position "downgrade" that allegedly occurred on May 9, 2008, as it occurred approximately 18 months prior to plaintiff's initial contact with an EEO Counselor, on November 22, 2009. See ECF No. 41-1, at 42-43. In dismissing the claim, the April 12, 2010 letter from the EEOC states: "[A]nything occurring before October 8, 2009 is beyond the 45-day time limit for initiating timely contact with an EEO Counselor. . . . [A] discrete act is independently actionable only is it is the subject of a timely charge." Id. at 42. Plaintiff responds to defendant's request for dismissing by asserting that she did exhaust administrative remedies as to the position downgrade, asserting that "[t]he matter was originally dismissed but was reconsidered and accepted the next day." ECF No. 48, at 2. Plaintiff's argument references a letter from the EEOC dated April 13, 2010, which is entitled "Notice of Corrected Partial Acceptance of EEO Complaint." ECF No. 41-1, at 30. In such letter, the EEOC amended the April 12, 2010 letter to clarify that plaintiff's allegation that she was not allowed to attend the Revenue Enhancement Training / Education Summit in Clearwater, FL, which took

place on October 19-23, 2009, would be accepted as a timely-raised discrete event, and therefore accepted for investigation. Id. at 32-33. With regard to the position "downgrade," however, the April 13, 2010 letter repeats that the downgrade is dismissed as an independently actionable claim for failure to comply with the applicable 45-day time limit. Id. at 32.  As the EEOC dismissed the position "downgrade" as an independently actionable claim for failure to pursue the claim in a timely manner and plaintiff has not cited to any evidence to the record that would lead the court to believe that the "downgrade" incident was timely brought before the EEOC, she has failed to exhaust administrative remedies with respect to that claim. Thus, the court may not consider it as a discrete claim of disparate treatment and consequently plaintiff's position downgrade disparate treatment claim is dismissed with prejudice.

### B.  ADEA Claims

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). The protected class under the ADEA "is limited to individuals who are at least 40 years of age." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (citing 29 U.S.C. § 623(a)(1)). In an ADEA discrimination case, the plaintiff bears the burden of proving "that age was 'the reason' that the employer decided to act." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 68 (2009) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). The ADEA does not authorize a plaintiff to bring mixed-motive age discrimination cases in which age is only a "motivating factor" for an adverse employment action. See Gross, 557 U.S. at 175-76. It requires a plaintiff "to prove by a preponderance of the evidence (which may be direct or

circumstantial), that age was the 'but-for' cause of the challenged employer decision." Id. at 177-78 (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-44 (2000)).

### i. Hostile Work Environment

To prevail on an age-based hostile work environment claim, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of her employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that she did in fact perceive it to be so; and (6) some basis for employer liability has been established. Reyes Vega v. Pepsi Cola Puerto Rico Distributing LLC, 371 F.Supp.2d 21, 27 (D.P.R. 2005) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)). "The Court typically looks to the totality of the circumstances, analyzing 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . ; and whether it unreasonably interfered with an employee's work performance' in order to determine whether a hostile work environment claim exists. Méndez-Martínez v. Caribbean Alliance Ins. Co., 851 F.Supp.2d 336, 347 (D.P.R. 2012) (citing O'Rourke, 235 F.3d at 728-29).

Although plaintiff may not pursue the position downgrade as a discrete instance of discrimination, both the April 12, 2010 letter and the April 13, 2010 letter from the EEOC make clear that the May 9, 2008 position downgrade may be used as evidence of a hostile work environment based on plaintiff's age, gender, and / or national origin. ECF Nos. 41-1, at 31, 41. The letters note that "[b]ecause the incidents that make up a hostile work environment claim

9

collectively constitute one unlawful employment practice, the entire claim is actionable as long as at least one incident that is part of the claim occurred within the filing period." Id. The EEOC accepted a hostile work environment claim for investigation, which included the following events plaintiff alleged in her first complaint: (1) on May 3, 2004, plaintiff was given an office without a door; (2) on May 9, 2008, plaintiff's position was downgraded from a Grade 7, Step 9 to a Grade 6, Step 10; (3) beginning on July 9, 2008, plaintiff was not included in regular staff meetings; (4) beginning in 2008 León did not assign any new employees to any of the working spaces in plaintiff's area; (5) on May 14, 2009, following a meeting with León regarding the formation of CPACs, plaintiff "became 'very confused,' anxious, and began to have 'doubts' about her job because of the 'poor information provided.'"; (6) on June 9, 2009 López informed plaintiff that due to the CPAC consolidation she would lose her position as an Accounts Receivable Technician (Grade 7) and thus would have to complete for positions at the CPAC or request another position at the VA; (7) on July 12, 2009 Edwin Segarra Pérez informed plaintiff that she had to find a position at the VA in San Juan; (8) on October 16, 2009 Cruz told "everyone," including plaintiff, "to provide their names, last four numbers of their SSNs, position, and grade; otherwise, the only alternatives were positions in the 'laundry, housekeeping, or dietetic services.'"; (9) plaintiff was "not allowed" to attend the Revenue Enhancement Training / Education Summit in Clearwater, FL held from October 19-23, 2009; (10) and on January 28, 2010 several supervisors attended a training, "which made [plaintiff] feel 'intimated' because she and her co-workers 'didn't feel free to ask questions or present situations.'" ECF No. 41-1, at 35-36. Thus, insofar as the position downgrade is relevant to

support this hostile work environment claim based on age, plaintiff has exhausted administrative remedies.

Defendant's memorandum in support of summary judgment, asserts that "[i]n this case, there is no evidence to sustain allegations of disparate treatment and hostile work environment on the basis of age, gender, and / or national origin. . . ." ECF No. 42, at 1. In light of the fact that plaintiff did not explicitly assert in either the complaint in the case of caption or in the Joint Proposed Pretrial Order ("PPO") that she was pursuing a hostile work environment claim in this case, on January 13, 2015 plaintiff was ordered to clarify whether she is indeed pursuing a hostile work environment claim based on age, gender, and / or national origin.[9] ECF No. 56. She clarified that she "has no claim based on gender or national origin discrimination," but that she is claiming "age discrimination when she was downgraded and was excluded from several trainings offered by the agency."[10] ECF No. 57, at 1. She states, "[t]his situation created a hostile work environment at the time, based on Plaintiff's age." Id. Thus, based on plaintiff's own assertions her hostile work environment claim is limited to the contention that she experienced a hostile work environment on the basis of her age.

Plaintiff cannot prevail on an ADEA hostile work environment claim in this case for several reasons. As a preliminary matter, the complaint does not allege that plaintiff was in the ADEA's protected class, i.e. that she was 40 years of age or older at the time the relevant events occurred, nor does it, alternatively, include her date of birth such that a rational inference could

---

[9] Plaintiff alleged a claim of hostile work environment in her complaint to the EEOC based on age, gender, and national origin discrimination. See ECF No. 41-1, at 31. Because plaintiff did not assert retaliation as a ground for her hostile work environment claim before the EEOC, she may not assert a claim of hostile work environment due to retaliation for prior EEO activity in this case, as she has not exhausted administrative remedies.

[10] Plaintiff noted that she is claiming age discrimination and retaliation regarding her non-selection for the Program Support Assistant position as well, the merits of which are addressed in this opinion. ECF No. 57, at 1.

be drawn regarding her age during the relevant period.[11] However, even overlooking this procedural flaw, in response to defendant's motion for summary judgment plaintiff has not demonstrated there is a triable issue of fact with regard to whether she experienced a hostile work environment on the basis of age. In her memorandum in opposition to summary judgment, plaintiff does not mention any hostile work environment claim. See Harriman v. Hancock Cnty., 627 F.3d 22, 28 (1st Cir. 2010) (citation omitted) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."). Furthermore, no evidence has been brought to the court's attention with citations to the record that plaintiff was not included in regular staff meetings beginning on July 9, 2008, that beginning in 2008 León did not assign any new employees to the working spaces in plaintiff's area, that on July 12, 2009 Edwin Segarra Pérez informed plaintiff that she had to find a position at the VA in San Juan, that on October 16, 2009 Cruz told plaintiff to provide her name, the last four numbers of their SSNs, her position, and grade, that on May 14, 2009 plaintiff became 'very confused,' anxious, and began to have 'doubts' about her job," or that plaintiff felt intimated at a training held on January 28, 2010.

It is clear for summary judgment purposes that plaintiff's position was in fact downgraded from a Grade 7, Step 9 to a Grade 6, Step 10. Additionally, plaintiff has submitted an unsworn statement under penalty of perjury in support of her opposition to summary judgment in which she asserts that immediately after the downgrade León began "taking duties away from [her], in order to assign them to the new employees . . ." and that plaintiff was never informed of the Revenue Enhancement Training / Education Summit in Clearwater, FL held from October 19-23, 2009, which new employees attended. ECF No. 49-1, ¶¶ 2, 13. There is also

---

[11] But see n.3.

evidence that due to the transition to CPACs plaintiff was notified that she needed to request a new position within CPAC or obtain another position within the VA hospital facility. The record also establishes that plaintiff worked in an area without a door, as León stated in an affidavit that "[plaintiff] works in a cubicle in the First Party Unit section at Tres Ríos Building. These cubicles do not have a door." ECF No. 51-2, at 3.

With regard to working in a cubicle without a door, even if plaintiff subjectively perceived the decision to assign her to such a workspace as offensive, the same is not objectively offensive conduct such that a reasonable person would find it hostile or abusive, as required to support a hostile work environment claim. As to the fact that plaintiff was informed that she needed to apply to a new position due to the transition to CPAC and that she was not included in the Revenue Enhancement Training / Education Summit along with newer employees, they are isolated events that do not rise to the level of pervasive hostility, absent evidence of a more significant pattern of similar occurrences or of how they materially impacted her work environment. See ORourke, 235 F.3d at 732 ("A plaintiff usually will not have a viable claim of hostile work environment from single acts that are isolated or sporadic or not themselves severe enough to alter the work environment and create an abusive work environment—both from an objective and subjective viewpoint."). While there could be circumstances surrounding a position "downgrade" that could amount to an abusive work environment for an employee, it is not viable from the evidence brought to the court's attention with citations to the record that a jury could find that it did so in this case, particularly in light of the fact that plaintiff's title as "Accounts Receivable Technician" remained unaltered after the downgrade and the conclusory nature of the evidence regarding her change in duties. Although the alteration in duties that plaintiff claims

occurred after the downgrade is indeed relevant to the analysis of her work environment, the evidence regarding the removal of her duties leaves to speculation, among other things, which duties were transferred to newer employees, whether the duties were included in plaintiff's job description before and / or after the downgrade, whether plaintiff was assigned other duties associated with her job description, and whether she retained sufficient work that fell within the scope of her Accounts Receivable Technician position.

However, even assuming for argument's sake that evidence brought to the court's attention is sufficient to create a jury issue as to whether plaintiff experienced severe and pervasive harassment, "[p]laintiff fails utterly to proffer facts based upon evidence of record connecting the treatment of which [s]he complains to h[er] age." Gutíerrez-Lines v. Puerto Rico Elec. and Power Authority, 751 F.Supp.2d 327, 342 (D.P.R. 2010) (granting summary judgment as to ADEA hostile work environment claim); see also Acevedo-Padilla v. Novartis Ex Lax, Civ. No. 08-1185, 2010 WL 3785689 at *26 (D.P.R. Sept. 30, 2010) (finding that ADEA hostile work environment claim could not prevail where plaintiff failed to demonstrate that the behavior that constituted the basis for the claim was related to age-based animus). It is uncontested that two of plaintiff's coworkers underwent a position downgrade along with plaintiff, both of whom were over the age of 40. This fact alone does not establish a reasonable inference that plaintiff experienced a hostile work environment on the basis of her age, or even that the downgrade itself was age-related. It lacks context that might bolster its significance, such as how many employees had the same position as plaintiff at the time, whether other, younger employees had that position and retained their grade and step, and whether other, older employees had the position and did not experience a similar change. Plaintiff also points out that the downgrade occurred without a

"desk audit" of the position. ECF No. 49-1, ¶ 11. It is unclear how this is related to plaintiff's age at the time of the downgrade; she has not cited to evidence that desk audits were performed regarding younger employee's positions or to anything else that would elucidate the relevance of the desk audit to her age discrimination claim. Overall, plaintiff has not identified a single comment or utterance that would suggest any of the events were related to her age or circumstantial evidence from which a jury could arrive at a rational conclusion that her employer acted based on age bias in assigning her to a cubicle without a door, downgrading her position, reassigning her duties to new employees, requiring her to apply to a new position in order to remain employed, or failing to send her to the Revenue Enhancement Training / Education Summit in Clearwater, FL. Under such circumstances no reasonable jury could find in favor of plaintiff on an ADEA hostile work environment claim; thus it is dismissed with prejudice.

### ii.  Denial of Training

In order to sustain an employment discrimination claim under the ADEA, "a plaintiff must show, among other things, that he suffered an 'adverse employment action' on account of a protected ground." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (citing García v. Bristol-Myers Squibb Co., 585 F.3d 23, 31 (1st Cir. 2008)); see also Gómez-Pérez v. Potter, 452 Fed.Appx. 3, 8 (1st Cir. 2011). "An 'adverse employment action' is one that 'affect[s] employment or alter[s] the conditions or the workplace," and typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant changes in benefits.'" Id. (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); accord Gu v. Boston Police Dep't, 312 F.3d 6. 14 (1st Cir. 2002)). Under the ADEA, "the denial of professional training

opportunities may constitute an adverse employment action, but only where an employee can show 'material harm' from the denial, 'such as a failure to promote or a loss of career advancement opportunities.'" <u>Trachtenberg v. Dep't of Educ. of City of New York</u>, 937 F.Supp.2d 460, 468 (S.D.N.Y. 2013); <u>Casey v. Mabus</u>, 878 F. Supp. 2d 175, 184 (D.D.C. 2012); <u>see also</u> <u>Colon-Fontánez v. Municipality of San Juan</u>, 671 F. Supp. 2d 300, 333 (D.P.R. 2009) <u>aff'd</u>, 660 F.3d 17 (1st Cir. 2011) (noting that even if the employer had intentionally prevented the employee's participation in a training workshop such conduct would not classify as an adverse employment action under Title VII).[12]

As previously mentioned, plaintiff brought a claim before the EEOC that avers that she was not allowed to attend the Revenue Enhancement Training / Education Summit in Clearwater, FL, which the EEOC accepted for investigation as independently actionable claim. <u>See</u> ECF No. 41-1, at 32. In the complaint in the case of caption, however, plaintiff does not mention that specific training, but does allege that while Léon was her supervisor plaintiff "was never given any training except the mandatory trainings given through computer." ECF No. 1, ¶ 37. Plaintiff's conclusory allegation that while under León's supervision she was not given training opportunities aside from mandatory computer trainings does not articulate how the conditions, status, or benefits or her employment were impacted—i.e. that she experienced a material harm as a result of the denial of training. While the complaint contains the broad allegation that "[t]he actions taken by [d]efendant . . . have caused her to be depressed and ha[ve] resulted in an loss income [*sic*]," this catch-all damages allegation is not sufficiently specific to demonstrate how

---

[12] Because both Title VII and the ADEA require that the denial of a training opportunity result in material harm to the employee in order to constitute an adverse employment action, cases from the Title VII context have also been cited in this section as persuasive authority.

the lack of additional trainings influenced her employment. ECF No. 1, ¶ 39. In an unsworn statement made under penalty of perjury, plaintiff states that she would have benefitted from the training held in Clearwater, Florida "because the themes that were going to be covered there were related to my duties that I would occasionally perform." ECF No. 49-1, ¶ 13. She continues: "I was never informed of this training and never had the opportunity to better myself professionally through said training." Id. In her deposition, plaintiff concedes that she did not apply for the training in Clearwater, Florida, but states that the VA sent "the new employees" to training. Id. She asserts that an e-mail was sent out to the new employees regarding the training, but that she was not included in the e-mail. ECF No. 41-3, at 6.

Plaintiff's explanation that the training was related to duties she "occasionally" performed does not convert the failure to send her to the training into an adverse employment action; the fact that she may have experienced some benefit from attending the training does not suggest that she suffered "objectively tangible harm" because the VA did not send her to the training. However, assuming for argument's sake that the benefit of more training, including attendance at the Revenue Enhancement Training / Education Summit in Clearwater, Florida, would have made plaintiff a more competitive candidate for job openings at the VA and elsewhere, her allegation nonetheless does not rise to the level of an adverse employment action under Title VII or the ADEA because she has not demonstrated the lack of training resulted in material harm to her. See e.g., Casey, 878 F. Supp. 2d at 184 ("Although it is logical in the abstract to think that more training results in higher quality work and better career opportunities, the plaintiff alleges no facts to demonstrate how these added trainings would have materially affected her employment. Likewise, even assuming that the denial of training opportunities made

the plaintiff a suboptimal worker, such denial is still not an 'adverse employment action' under Title VII absent some concrete factual allegation that her training deficit imposed a tangible harm on the terms, conditions, or privileges of her employment."). Because the failure to send plaintiff to the Revenue Enhancement Training / Education Summit in Clearwater, Florida does not constitute an adverse employment action for the purposes of the ADEA, this claim is dismissed with prejudice.

### iii.  Failure to Promote

#### 1.  Due to Age

Where there is little overt evidence of discrimination and the plaintiff is relying on circumstantial evidence, he or she must make a *prima facie* case according to the McDonnell-Douglas burden-shifting framework in order to survive a motion for summary judgment. Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11 (1st Cir. 2003). "To establish a *prima facie* case of disparate treatment under the ADEA in a failure-to-promote claim, a plaintiff must show that (1) he was at least forty years old at the time of the adverse employment action; (2) he was qualified for the position; (3) he was denied the promotion; and (4) the position was filled by someone younger with similar qualifications." Ortiz-Santiago v. Vaquería Tres Monjitas, Inc., Civ. No. 08-1097, 2009 WL 2058671, at *5 (D.P.R. July 10, 2009) (citing Arroyo–Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008)). Establishing a *prima facie* case "gives rise to an inference that the employer discriminated due to the plaintiff's advanced years." Mesnick, 950 F.2d at 823. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. The shift to the

18

employer "entails only a burden of production, not a burden of persuasion." Id. (citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Medina-Muñoz, 896 F.2d at 9). If the employer meets this limited burden, the presumption created by the *prima facie* disappears. St. Mary's Honor Ctr. v. Hicks, 277 F.3d 40, 45 (2002). Plaintiff then has the opportunity to show that the employer's reason is a pretext for discrimination, allowing the factfinder to infer "discriminatory animus." See Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 448 (1st Cir. 2009); González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002). Throughout this burden-shifting process the plaintiff retains the ultimate burden of proving that unlawful discrimination based on the plaintiff's age was the "but-for" cause of the challenged employment action. See Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012) (citing Gross, 557 U.S. at 175-77); González, 304 F.3d at 69. "In the context of a summary judgment proceeding, once the employer articulates a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, 'before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision . . . was wrongfully based on age.'" Pages-Cahue, 82 F.3d at 536 (quoting LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1993)).

Plaintiff has satisfied the first, second, and third prong of a *prima facie* case of age discrimination with regard to her non-selection for the Program Support Assistant vacancies. It is uncontested that she was over 40 years of age at the time she applied to the position and that she was not chosen for the position.[13] With regard to her qualifications for the position, plaintiff's

---

[13] However, as mentioned with regard to plaintiff's ADEA hostile work environment claim, the complaint does not allege that plaintiff was over 40 years of age at the time of the position downgrade or include an alternative allegation from which her age could be inferred. See ECF No. 1.

evaluations at the VA had always been satisfactory or outstanding prior to the decision not to award her said position and she was placed on a list of qualified candidates to interview for the position.

With regard to the fourth element of the *prima facie* standard, however, plaintiff's case is somewhat weaker. Aside from the uncontested fact that plaintiff was among the 21 candidates on the list of interviewees for the position, plaintiff has not adduced evidence that she had similar qualifications to the 7 selectees. Instead, she contends that the comparative evidence of the ages of employees who were selected for the position with those who were not—that is, that 6 of the 7 selectees were under the age of 40 and only 1 was above 40 years of age—supports an inference of unlawful discrimination that is sufficient to satisfy her initial burden. Plaintiff points out that the average age of those selected for the position was 37, which is below the age of the protected class under the ADEA. Finally, she notes that the announcement for the Program Support Assistant position indicated it required only one year of experience "making [her] seniority and superior experience useless." ECF No. 49-1, ¶ 6.

Assuming for argument's sake that plaintiff did have similar qualifications to the younger selectees, she nonetheless has not brought forth sufficient evidence that her non-selection was related to age to survive summary judgment on this issue. Defendant has indicated that plaintiff did not receive a Program Support Assistant position because she "ranked very low" after Russell calculated the sum of the scores that panel members López and Rodríguez had awarded to the various candidates. ECF No. 42, at 15. Defendant elaborates that the 7 candidates selected received higher interview rating scores "because they gave betters answers and examples that demonstrated their ability to understand concepts [and] ideas and to express them clearly,

addressing interpersonal effectiveness, flexibility / adaptability, customer service, creative thinking and system thinking." Id. Plaintiff appears to argue that because aspects of defendant's rationale are contested defendant may not satisfy its "burden of proof," and thus is not entitled to summary judgment. Within the McDonnell-Douglas framework, a defendant "need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was [not promoted] for a nondiscriminatory motive." Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007). It is unnecessary for such a reason to be uncontested, as such a requirement would largely render the pretext inquiry moot. Moreover, it *is* uncontested for summary judgment purposes in this case that plaintiff was ranked 19th on the list of 21 candidates interviewed for the Program Support Assistant vacancies based on her cumulative interview score. Overall, defendant's explanation that it chose other candidates instead of plaintiff because she had a low ranking on the list of interviewed candidates is sufficient for defendant to meet its burden of presenting a non-discriminatory reason for its decision. Thus, "the presumption of discrimination created by the *prima facie* case drops away and the burden of production shifts back to . . . plaintiff" to evince that defendant's reason is pretextual and that she would have been hired to the position in question but-for her age. Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000) (citation omitted).

Plaintiff has not brought forth evidence that tends to discredit defendant's reason for not selecting her or sufficient evidence from which a rational jury could determine that she was not awarded the Program Support Assistant as a result of age discrimination. The fact that there was a one-year experience requirement does not give rise to a rational inference that plaintiff was denied a position because of her age, rather than her low interview score as defendant asserts.

Aside from the fact that 6 of the 7 selectees were younger than plaintiff and under 40 years of age and that the average age of the 7 selectees was 37, plaintiff has not brought additional evidence to the court's attention that she was not awarded a Program Support Assistant because of her age. Statistics regarding the ages of the selectees, without additional statistical information regarding the applicant pool for the position, do not permit a rational inference that defendant did not treat age neutrally in choosing candidates for the fill the Program Support Assistant vacancies. "[S]tatisics, when considered in isolation and outside of context, are not probative of age discrimination." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 145-46 (1st Cir. 2012) (citing Cruz–Ramos v. P.R. Sun Oil Co., 202 F.3d 381, 385 (1st Cir.2000)); see also Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650-51 (1989) (finding that statistical evidence carried "little weight absent some information of the number of [older] applicants or the composition of the relevant labor market."). No statistical evidence regarding the ages of the remainder of the individuals in the applicant pool or the composition of the relevant labor market has been brought to the attention of the court. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993) ("[T]he fact that recently hired [employees] are younger than [the plaintiff] is not necessarily evidence of discriminatory intent, but may simply reflect a younger available work force."). While it is clear from the uncontested facts that the majority of selectees were under 40 years of age and that the average age of the selectees was also under 40 years old, plaintiff has not provided additional information to render these numbers significant in proving a bias for younger employees. Even assuming all 7 selectees were under the age of 40, additional information is needed about the ages of the applicants or workforce in order to rely on this figure as proof of age discrimination. Thus, because a rational jury could not conclude that age was the

determinative factor in the decision not to promote plaintiff to the Program Support Assistant position, her ADEA failure to promote claim is dismissed with prejudice.

### 2.   Due to Retaliation

The ADEA makes it unlawful for an employer to discriminate against any of its employees because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing related to activity protected by the statutes. 29 U.S.C. § 623(d). With regard to causation, "a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ.of Tex. Sw. Med. Center v. Nassar, — U.S. —, 133 S.Ct. 2517, 2520, 2534 (2013); see also Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, n. 1 (1st Cir. 2013) ("[T]he Supreme Court has required 'but-for' causation under the . . . anti-retaliation provision of Title VII of the Civil Rights Act of 1964, rejecting the 'motivating factor' test applied by the lower court in that case."). To prove a claim of retaliation a plaintiff must establish: (1) plaintiff's protected participation or opposition; (2) a materially-adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination"; and (3) the adverse action taken was causally linked to the plaintiff's protected activity. Mariani–Colón v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007).

Defendant does not dispute that plaintiff can satisfy the first and second prongs of a *prima facie* case of retaliation with respect to the decision not to promote her as a Program Support Assistant, but contend that plaintiff has "failed to establish any causal connection between her alleged protected activity and the non-selection." ECF No. 42, at 13. Plaintiff's

response, in its entirety, is that "[n]on [*sic*] of the selectees were known to have any prior EEO activity." ECF No. 48, at 6. This argument falls short of establishing the requisite causality. There is no evidence in the record that other individuals who had engaged in prior EEO activity applied to the Program Support Assistant vacancies, or, if they did so, that such individuals were qualified for the job in question. The mere fact that none of the 7 selectees had previously engaged in protected activity, in isolation, has no probative value as to whether plaintiff was not selected due to her own protected activity.

Plaintiff does not raise an argument in her memorandum in opposition to summary judgment that the temporal proximity of her first EEO complaint and her non-selection is sufficient to demonstrate a causal connection. Nevertheless, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); see also Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 (1st Cir. 2005) (two-month gap too remote); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."); Mesnick, 950 F.2d at 828 (nine-month gap too remote). At least five months transpired between the date plaintiff filed her first complaint with the EEOC, February 1, 2010, and her non-selection for the Program Support Assistant position in July 2010. The EEO complaint was "accepted for investigation" in April, 2010. ECF No. 49, ¶ 8. While it is possible that one or more of her supervisors or relevant decision-makers at the VA learned of her EEO complaint in very close proximity to the date of her non-selection,

she has not brought any such evidence to the court's attention in support of her *prima facie* case.

Furthermore, like with a claim of age discrimination under the ADEA, reprisal discrimination requires that a plaintiff show that unlawful discrimination was the but-for cause of the adverse employment action in question in order to prevail. As discussed above, defendant has articulated a sufficient non-discriminatory reason for plaintiff's non-selection to shift the ultimate burden back to plaintiff to present evidence of pretext. Thus, even if temporal proximity were enough for plaintiff to meet her causation burden at the *prima facie* stage, it does not undermine defendant's reason for declining to promote her or create a sufficient causal link from which a jury could find that reprisal for filing her first EEO complaint was the but-for reason for her non-selection. See Ponte v. Steelcase Inc., 741 F.3d 310, 322 (1st Cir. 2014) (quoting Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)) (internal quotation marks omitted) ("[C]hronological proximity does not by itself establish causality, particularly if [t]he larger picture undercuts any claim of causation."); see also Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013) (citations omitted) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."); and Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004) (finding that one-month gap between filing of an EEO complaint and adverse employment action was sufficient temporal proximity to satisfy plaintiff's *prima facie* causation burden, but was insufficient to demonstrate pretext or that the adverse employment action was the result of discriminatory animus). Because the summary judgment lacks additional indicia of causation, the fact that plaintiff's first EEO complaint was under investigation at the time she was rejected for the Program Support Assistant position or that she filed the EEO complaint approximately 5 months prior to her non-selection does not enable her to defeat

defendant's motion for summary judgment on this issue. Therefore, her claim of retaliation for prior EEO activity is dismissed, with prejudice.

### C.  Abandoned Claims

At a status conference held on February 17, 2014 plaintiff was given a deadline of March 19, 2014 to inform whether she voluntarily desists from her "Title VII claims," but she did not file anything by the deadline indicating she had desisted from those causes of action. ECF No. 27, at 1. In the PPO, plaintiff states that "[she] waived the causes of action of national origin and gender discrimination." ECF No. 55, at 21. In response to the court's order to clarify whether she is bringing a hostile work environment claim, plaintiff also broadly stated that she "has no claim based on gender or national origin." ECF No. 57. While it appears plaintiff has abandoned such causes of action and thus the analysis regarding her Title VII gender and national origin could end here, in an abundance of caution the merits of the motion for summary judgment as to the gender and national origin discrimination failure to promote claims are analyzed below.

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may rely on direct or circumstantial evidence in making a claim or employment discrimination. See Hidalgo v. Overseas Condado, 120 F.3d 328, 332-22 (1st Cir. 1997). The trial court must evaluate the evidence presented as a whole in order to determine if such evidence is sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by a discriminatory animus based on membership in a protected class. See Hidalgo, 120 F.3d at 335 (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993)).

26

Bearing in mind that gender and national origin claims are evaluated under a motivating factor standard, and thus her causation burden for these claims is lower than with respect to her claims of age and reprisal discrimination, plaintiff has not brought any evidence to the court's attention that suggests her gender or national origin motivated the decision not to send her to the Revenue Enhancement Training / Education Summit in Clearwater, FL[14] or to award her a Program Support Assistant position. In relation to gender, when plaintiff was asked in her deposition what she bases her gender discrimination claim on, she responded, "because I deem that [León] . . . preferred younger employees," and proceeded to note: "Female." ECF No. 41-15, at 34: 4-10. The deposition continues:

> Q: I understand that but that goes to their age but I am talking about the gender. I mean, you based your claim of gender discrimination on anything else and I don't mean to say that what you stated is a little thing. I just need to know that we covered everything.
>
> A: No.

ECF No. 41-15, at 34:11-15. As indicated in the question to plaintiff, her response is a general statement regarding León's age-based preference, but is not probative of discrimination against females. In fact, plaintiff's response suggests that León actually had a preference for female employees. Furthermore, it is uncontested that "most" of the individuals who were in fact given the positions were females. In light of this fact and that no other evidence has been brought to the court's attention that plaintiff was impermissibly discriminated against based on her gender, no reasonable jury could find in favor of plaintiff for her failure to promote and failure to train gender discrimination claims, thus said claims are, if still alleged at all, dismissed with prejudice.

---

[14] The analysis regarding plaintiff's ADEA claim that she was denied training opportunities, which concludes that such denial does not constitute an adverse employment action in this case, applies with equal force to Title VII.

As to national origin discrimination, no evidence has been brought to the court's attention regarding the national origin of the selectees or applicants for the positions or of the employees who attended the Revenue Enhancement Training / Education Summit in Clearwater, FL. Nor has plaintiff cited to any direct evidence of a bias against her in the hiring process due to her national origin. A review of the summary judgment record reveals that in her deposition, plaintiff was asked about the grounds on which she bases her national origin claim. ECF No. 41-15, at 36:11-22. She replied: "Because there is one person who is not an employee who is not of Puerto Rico origin but who has quite benefitted at the institution, brought in by Miss Leon." Id. at 36-37. Plaintiff explained that the employee to whom she referred, Jubelys Jorge ("Jorge"), was from the Dominican Republic. Id. Plaintiff was asked if she believes that Jorge was favored because she was not Puerto Rican, and plaintiff replied "[m]aybe." Id. at 38:1-3. Plaintiff was also asked "[d]o you believe that because you were Puerto Rican you were disfavored?," and she replied "I don't know." Id. at 38:4-6. This deposition testimony does not establish a triable issue of fact with regard to plaintiff's claim of national origin discrimination. Her vague assertion that one employee from the Dominican Republic "benefitted" at the VA bears no direct relationship with the hiring decision for the Program Support Assistant position or the decisions as to which training plaintiff would be offered. Moreover, her equivocal responses with regard to whether Jorge was favored due to her national origin or plaintiff was disfavored due to the same serve to further undermine a claim of national origin discrimination.[15] Overall, no rational jury could conclude that plaintiff was denied a Program Support Assistant position due to her national

---

[15] Additionally, defendant proposed as an uncontested fact that "Ms. Marrero cannot assert that she was disfavored because of her national origin," which plaintiff admitted in her response to defendant's proposed facts. ECF Nos. 41, ¶ 116; 49 at 1.

origin, thus defendant's motion for summary judgment is granted as to such claims, which are hereby dismissed with prejudice.

**V.    CONCLUSION**

Plaintiff has pursued employment discrimination and / or retaliation claims in this case related to three actions taken by the VA: the downgrade of her positions, the failure to provide her training opportunities, and her non-selection for the Program Support Assistant position. As to the downgrade of her position, plaintiff did not contact an EEO counselor within the applicable 45-day period to do so, barring this court from considering it as an independent adverse employment action for purposes of a disparate treatment claim. While the EEOC did accept her position downgrade claim as a potential incident related to a broader hostile work environment, plaintiff has not established that there is a genuine issue of material fact with regard to that claim. As to her allegation of denial of or exclusion from training opportunities, her claim does not rise to the level of an adverse employment action under Title VII or the ADEA, since she has not articulated that the denial objectively impacted the terms or conditions of her employment at the VA. Finally, with regard to her non-selection for the Program Support Assistant position, no rational jury could find that plaintiff was denied the position in question because of her age or in retaliation for prior EEO activity. As to whether the denial of the position or the failure to provide training were motivated by her gender or national origin, plaintiff appears to have voluntarily abandoned such claims, but nevertheless has not presented evidence that there is a triable issue of fact regarding those theories. Based on the foregoing analysis, defendant's motion for summary judgment (ECF No. 40) is **GRANTED** and all claims in the complaint are hereby dismissed, with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 15th day of January, 2015.

s/Marcos E. López

U.S. Magistrate Judge
